Good morning. May it please the Court, my name is Rebecca Pannell, representing Mr. Ramirez-Mendoza. I've received the Court's order asking for some discussion of the Valdivinos-Torres case, so I wanted to start with that. I think Valdivinos-Torres is distinguishable from our case for two important reasons. One is that Valdivinos-Torres did not involve an allegation of procedural error, something I'll discuss later. And unlike here, the District Court in Valdivinos-Torres found that there were individual reasons based on the defendant's particular case to invoke supervised release, and here there was no such individual finding. The procedural error with respect to the imposition of supervised release I think is very clear. The District Court's only reason for imposing a new term of supervised release was that one had been imposed previously. The District Court said this is a continuation of the previous term, and that as articulated at the time, I indicated to the Court, was wrong, and even more clearly this Court came out with the Wing case, subsequent to the hearing, ruling very clearly that when supervised release is revoked, that term is over, and the new term is a new term. So that simply was not a justification for a term of supervised release. So what we have is an imposition of a term of supervised release without discussing the applicable guideline, which talks about supervised release not ordinarily being appropriate, and instead relying on a mistaken impression of the law that a term of supervised release can simply be continued on. The procedural error alone would be reason to remand this case. Even if there might have been other reasons on the record, which there weren't, but even if there had been other reasons on the record for imposing supervised release, if there's a misdirection with respect to an impermissible factor and a permissible factor for imposing sentence, this Court's case law is that the sentence is invalid, has to be remanded, and the Court's discussion in the district. So this case, very different from Valdivinos-Torres, involves a procedural error. That case did not have any allegation of procedural error. Substantively, of course, Valdivinos-Torres involved the district court making specific findings as to the defendant, saying that in this case, based on your family here in the United States, there would be an added degree of deterrence to impose supervised release. No such individual finding was made here. And Valdivinos-Torres relied on the Fifth Circuit case of Domingos-Alvarado in discussing the new sentencing guideline with respect to supervised release. And while those courts said that it shouldn't be called an upward departure, it is somewhat curious, because both this court in Valdivinos-Torres and the Fifth Circuit said that supervised release should not be imposed absent a determination that supervised release would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case. So while this court and the Fifth Circuit have used the language that this is not an upward departure, it seems to be somewhat akin to it. There needs to be an individualized finding. There was no such individualized finding in this case. For that reason, along with the reasons behind the amendment to the guideline, it's our position that not only was there a very clear procedural error, but there was a substantive error as well. I don't know if the Court has any questions with respect to the imposition of supervised release. That's our position. The other issue is the confrontation violation with respect to the domestic violence assault allegation. Again, I think it's very clear that an error took place. We cited the Comiteau case, indicated that there should not be hearsay brought in without an explanation of good cause. The District Court simply listened to the hearsay information and never asked for any good cause, despite myself asking why the individuals weren't here and they just simply weren't subpoenaed. There was not sufficient evidence of a violation without the hearsay. And, of course, the Comiteau case says that when there is hearsay introduced at a supervised release violation hearing, there must be a weighing of the defendant's right to confrontation against good cause and the right to confrontation. I agree with the government's brief. I think they concede, actually. So they concede and then they say, nevertheless, you can get away as long as the evidence is reliable, then the Comiteau test doesn't matter. But that's not this Court's case law. The Valdivia v. Schwarzenegger case talks about even if you're relying on very reliable exceptions to the hearsay rule, you still have to do the balancing test. It's the balancing test that controls, not an overall reliability test. And so if there isn't something to balance, there's no good cause. I haven't seen any cases where there's no good cause and there's at least some dispute. Is there any non-hearsay evidence or sufficient non-hearsay evidence to support the District Judge's conclusion? No, Your Honor. I listed in my opening brief what I believe the only non-hearsay evidence was, was the officer came to the scene, saw two men drinking. One looked scared. And one, my client, had a cut to his finger. But there was nothing else there. The fact that what the officer saw was consistent with the aftermath of an assault is by no way sufficient evidence with an assault. There are lots of things consistent with an aftermath of an assault. And I think that the Hall case is really instructive on this point. There are two violations that were discussed in that case. The court said, you know, look, there was confession that the defendant hit his girlfriend. There's sufficient evidence apart from the hearsay. But the other allegation was an unlawful imprisonment allegation. And there, even though there was a witness who said the defendant hit the woman, the woman had said, well, he left this, he was intimidating me with a golf club. And the golf club was found right where she said it was. There was fairly strong evidence to cooperate. This was not confronting that information. It wasn't conclusive. It was suggestive and consistent with unlawful imprisonment, but not conclusive. But in that case, unlike this one, the government had tried to subpoena the witness. She was homeless. And they put on testimony and established the good cause. So in that case, that's why that allegation was sufficient. Counsel, so is any error harmless in view of the fact that your client admitted to the third violation? We explained why we don't think it's harmless. It's not harmless to my client in that your Honor is very familiar with numerous immigration decisions. There's a lot of things that can be used against an alien wanting permission to enter into the United States. And finding by a U.S. District Court judge that someone committed an act of domestic violence is a serious adverse finding that should he want to come into the United States again would be problematic for him. He certainly has the right to have a clear record just as someone who maybe has served their full sentence but was not actually convicted in the first place has the right to a clear record. And the interest in an immigrant in that is, I think, particularly compelling because so many factors can be used in an immigration proceeding, unlike what legal rights a U.S. citizen may have in petitioning for certain benefits or what have you. I also think it's important because as a deterrence mechanism, I have to admit it was frustrating for me going to the hearing and not having a take into account. And I think that sometimes when a district court decision is sustained because it didn't impact anything, it can be misinterpreted as nothing wrong happened. And I think that we need to enforce the comatose decision and make sure that district judges and the U.S. attorneys office are very aware of what the obligations are with respect to the right of confrontation at supervised release hearings. If there is no, you know, legally significant error, how do we, I mean, that's sort of like giving an advisory opinion. Sure. I understand that. And I'm not saying that's the only reason. Like I said, I cited the matter of tin case of the immigration decision, which talks about the broad range of factors that the attorney general or the secretary of the Department of Homeland Security can use in determining whether or not someone can be given permission to come back after deportation. And like I said, it's a pretty strong finding, as opposed to an arrest for domestic violence, to have a U.S. district court judge's findings saying you committed that act. How do we know, or how might we know, that the district judge would have behaved in the same way had he not found that there had been a domestic assault, but had found only unlawful reentry? And he might have given less time still. He imposed a sentence of three months, and he might not have imposed the determination of if this court were to remand for the supervised release issue, that could change as well, depending on whether or not that violation... It still would be a grade C violation. It would still be a grade C, but I think that the domestic violence allegation, even though that's a misdemeanor and the reentry could be a felony, I think in a district judge's mind it's more concerning than a domestic violence allegation. As I looked at the record, it at least seemed to me possible that the judge was more concerned about the assault than about the reentry. Sure, sure. I think that... I couldn't tell. I think that that's a valid concern as well, Your Honor. I have 34 seconds left. I'll take that. Why don't we hear from the government, and we'll give you a chance to respond. Thank you. May it please the Court. My name is Allison Gregg-Weir, and I represent the United States in this matter. I would initially turn to the supervised release portion of the argument first if the Court desires to hear about that. In this case, the government argues that there was no procedural error in imposing supervised release on defendant. Specifically, looking to this Court's case of Valdeveros-Torres, this Court notes that there was no departure analysis triggered, which the government considers to be an indication of no procedural error. This Court noted that the supervised release was within the statutorily permissible range as well as within the guideline permissible range. And so looking to the areas where there could be procedural error in imposing supervised release, because the guideline was properly calculated, the government argues this is not procedural error. And, in fact, the guideline that we're speaking to, 5D1.1, speaks to a suggestion. It does not speak to a mandate.  It talks about what the Court ordinarily should do. Doesn't that imply that the Court should at least look at the particular release before the Court to determine whether or not, in this particular case, the imposition of supervised release would have a deterring effect? And that wasn't done in this case. Well, the Court didn't articulate that specifically on the record in this case, Your Honor. The government notes it did argue, in asking for supervised release, that deterrence was appropriate, given that defendant had just been convicted of a violation of 1326, wherein he agreed to three years of supervised release, and was found in the Eastern District of Washington just over a year after that supervised release had commenced. And that was argued to the Court. The difficulty I'm having is the Court, no one mentioned a specific guideline that talks about how supervised release considerations are to be analyzed when there's a deportable alien. That guideline provision was not considered specifically. It wasn't discussed by the Court. By anyone? Well, the defense raised it at the end. Oh, the defense raised it. Yes. But, no, it wasn't discussed by the Court. But the government would argue that since it's not mandatory, it's not mandatory within the guideline, that this is comparable to the Court not bringing up a suggested departure, not commenting on a departure that was suggested by the defense. And as this Court noted in the case of United States v. Vasquez-Cruz, wherein the defendant was arguing cultural assimilation and the sentencing judge did not utter the words cultural assimilation and no error was found. Can I ask you a different question? Why did the government proceed with the domestic assault violation after the objection was made about the hearsay? That was just a mistake, Your Honor. No excuse is the upshot to that. The government committed error in not putting on good cause for not having called those two witnesses. And the defendant had admitted to the one allegation that resulted in his death. This additional violation did not increase that guideline. And, you know, hindsight being what it is, the government ought not to have put it on. The allegation was one of misdemeanor assault. Of note, it wasn't one of domestic violence. And that actually came out during the hearing. It was of misdemeanor assault. And in seeking to prove up the misdemeanor assault, the government called the responding officer. I would note that the Court did primarily rely on the testimony of the officer contained at ER 41. And the testimony relies on what's contained at ER 25 to 26, wherein the officer, the Court notes, the officer was called in response to a 911 call. What he saw there was consistent with the subject of the call itself. The defendant was there. His car was abandoned but still running. He had been drinking. There was a woman, Ms. Rodriguez. She was visually upset. She was concerned. She wouldn't even talk to the officer until she was outside the site of the defendant. And then in its written order, the district court noted Officer Schuster's observations were consistent. But none of that is proof of assault, though, right? The aftermath of an assault. Well, Your Honor, I would note that the standard is a preponderance. And I also would note that this is a misdemeanor assault in Washington, the lowest level of assault. But the standard to prove is not less than preponderance, even though it's a misdemeanor, correct? That's correct, Your Honor. It's just I would note with what this Court has put out regarding fourth-degree assault under Washington law, it can be committed by a mere unconsensual touching. It can be committed by putting one in apprehension of some harm. So the alleged violation itself has a low threshold. And then finding that by preponderance. So I wouldn't say it's not conceivable that it could be based on the officer's statement. And is this then an argument that the officer's observations alone were enough to allow the court to find that there had been an assault? The government would argue, yes, the officer's observations by a preponderance. But the government also argues harmlessness in not conducting the balancing test consistent with Walker, which is probably a stronger argument. Help me understand that argument. In Walker. Harmless because. In Walker, the balancing test similarly was not conducted. And the probation officer had picked up another probation officer's file, was testifying from that file, and the defense objected, saying that there was a violation of confrontation. And the court ultimately found no harm in, found not conducting the balancing test harmless. And among the factors relied upon by the court were that the defendant was given the opportunity to refute the evidence, which did happen here. If you note the cross-examination of the responding officer was robust. And dealt with prior statements by the witness and by the victim and potential inconsistencies therewith. As well as, and this is the bigger issue for this case, the court said you also need to look at in determining harmlessness, the consequences of the court's finding. And in this case, the consequences of the court's finding were nil. Now, how do you know that? Your Honor, not only did the guideline range not change, and not only did the defendant get approximately half, just slightly over half of the bottom of that guideline range. When you look to the court's discussion in imposing sentence, the court doesn't utter the word assault. The court doesn't mention the assault at all. In fact, the court seems to adopt the defense's argument, whole cloth. But there are concerns that the court has with imposing a punishment upon a defendant whose initial deportation, he was not adequately advised of voluntary departure under this court's case law. And the court definitely, that is what he refers to in imposing sentence. And in fact, he specifically says to defendant, and this is at ER 58, there has to be some punishment involved, Mr. Ramirez. It does not have to be a long term. And that's after discussing the concerns he has with defendant's deportation hearing and with the prior conviction. So I think it would be really reading something into the record to say that the assault impacted his analysis. And what's the standard by which we determine harmlessness if the issue is whether the judge would have acted differently? Had there been no assault conviction? I think that the court. You say conviction, no finding of assault. I'm sorry, could you repeat that? I tangled the thing up. What's the standard by which we judge harmlessness if we're trying to figure out whether it would have made a difference had the judge not found that there had been an assault? If the court finds it rises to a constitutional magnitude, it would be beyond a reasonable doubt. It would be, I apologize. I think you do have to show harmless beyond a reasonable doubt. Yes, Your Honor. Okay. And that's a pretty high standard. Yes, Your Honor. I do think it's met in this case where the judge did not mention the assault. The guideline range was the same. And defendant received a sentence to about half of the bottom of the guideline range. I don't think it's conceivable that he would have received less still. What's the case that says it has to be harmless beyond a reasonable doubt? I thought it was that the error did not affect the district court selection of the sentence in part. If the burden of persuasion is not beyond a reasonable doubt, why do you have to prove harmless beyond a reasonable doubt? Your Honor, that's why I prefaced it by saying if the court finds it rises to a constitutional magnitude, which I don't know that I concede that it does. I do concede that I'm ill-prepared to answer that question. Well, and I'm not myself absolutely convinced that it's beyond a reasonable doubt. Okay. Your Honor, the only other things I would note, I guess, are in imposing supervised release. This Court talked about or, excuse me, the government cited to this Court a very recent, but albeit unpublished case, because at that time the Court didn't have a published case on the supervised release issue of Lopez Hernandez, wherein the Court noted that that defendant was already on supervised release at the time he committed his new 1326 offense. So, obviously, deterrence was necessary. The government would say at least those facts are on the record here, that this was a defendant who had committed a supervised release violation, not to mention the fact that he'd been removed eight times previously. So this defendant was in need of deterrence. And then the last thing I did want to mention is that that entire guideline is couched under the assumption that provision C, that any need for deterrence or any need for punishment can be met by a new 1326 prosecution should the defendant subsequently reenter. And I would just highlight to the Court, the sentencing case here focused on, but that was not the case with this defendant. As he stood before the district court judge, he did not have a removal order that could be relied upon to impose a new 1326. In fact, that's why he did not suffer the consequences of a 1326 this time. And then the government would just note that if SHOULD stands to make the first provision mandatory, that the Court should consider not imposing supervised release instead of Section C, then the SHOULD in Application Note 5, which says the Court should consider supervised release where deterrence is necessary, should also be mandatory. Thank you. Thank you. Briefly, the Comiteau case talks about what the standard proof is for showing error, and it says where the confrontation rights were violated, the government must show the violation was harmless beyond a reasonable doubt. And that's from the Comiteau case. But isn't that, I mean, in the revocation context, we're looking at due process, not confrontation. So due process doesn't have that same showing of harmlessness beyond a reasonable doubt, as you would if it were a constitutional violation under the Confrontation Clause. It's a confrontation due process. Comiteau was a supervised release violation due process case. It was not a Crawford confrontation case. So that case was precisely the balancing test case, and it says what? At a revocation hearing, if the balancing test is not satisfied, the government must show harmlessness beyond a reasonable doubt. That's the Comiteau case. The Walker case that the government cited was issued before Comiteau, and Comiteau came out with the balancing test that this court has found controls. And Walker, to the extent it's ever been cited since Comiteau has said, it is limited to very objective facts that are not contested. Unlike our case where there was cross-examination of the officer, there was no cross-examination of the probation officer who testified to the very limited fact of when supervised release began. The Walker said that was not a due process violation, and it has been severely limited to that type of circumstance. I've got Comiteau in front of me. Can you give me a page cite for that standard of harmlessness? Well, in my notes I didn't. I quoted it in my notes and didn't put a page number. It said in quotations, quote, whether the violation was harmless beyond a reasonable doubt is the quotation. And I believe that in my standard of review that I cited the Comiteau case as well. We can find it if you don't have it at your fingertips. Thank you. Thank you. Thank both sides for their arguments. United States v. Ramirez-Mendoza now submitted for decision.
judges: Fernandez, Fletcher, Rawlinson